IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

STEPHAN L. BAROTT      )
and ROXANNE BAROTT,     )
               )
    Plaintiffs,      ) TC-MD 120603N
               )
   v.         )
               )
DEPARTMENT OF REVENUE,   )
State of Oregon,       )
               )
    Defendant.      ) **DECISION**

Plaintiffs appeal Defendant's Notice of Deficiency Assessment for the 2009 tax year. A trial was held in this matter in the Tax Courtroom in Salem, Oregon on February 20, 2013. Daniel O. Stearns (Stearns), Oregon Licensed Tax Consultant, appeared and testified on behalf of Plaintiffs. Plaintiff Stephan L. Barott (Barott) testified on behalf of Plaintiffs. Jamie Tenace (Tenace), Tax Auditor, and Matthew Derby (Derby), Conference Officer, appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 58 and Defendant's Exhibits A through I were received without objection.

## I. STATEMENT OF FACTS

Barott testified that he is a professional surveyor who works primarily in Medford, Oregon. He testified that he periodically works outside of Medford, Oregon. Barott testified that, for instance, he had a job for the Siletz tribe in Lincoln City, Oregon, in 2009. He testified that his line of work requires a "GPS" [global positioning system] as well as computer equipment and software.

Barott testified that, in 2009, he maintained a separate business checking account as well as a QuickBooks account in which he entered businesses expenses. (*See* Ptfs' Exs 57, 58.)

Barott's QuickBooks expense entries include the date, check number (or debit), name, memo, and expense amount. (*See, e.g.,* Ptfs' Ex 6.) He testified that he made the memo entries describing each expense. Barott testified that, when he began using QuickBooks, he used the accrual basis, but subsequently switched to the cash basis. He testified that, when he began using QuickBooks, he entered most expenses as "miscellaneous." Barott testified that, at some point after 2009, he hired a QuickBooks trainer to help him improve his recordkeeping system; as a result, he created many additional expense categories and reorganized his expenses. (*See* Ptfs' Ex 5.) Barott and Stearns testified that they made other category changes at some point in 2011. (*See id.*) Stearns argued that the category of the claimed business expense is immaterial if the expense is ordinary and necessary.

Tenace questioned the reliability of Barott's QuickBooks expense records given the changes that have been made since those records were originally created in 2009. To illustrate her concern about the changes made, Tenace provided copies of Barott's 2009 Profit and Loss statement and General Ledger dated February 23, 2011, and November 25, 2011. (Def's Exs G-H.) She noted that the February 23, 2011, Profit and Loss statement reported total expenses of $33,557.49 whereas the November 25, 2011, Profit and Loss statement reported total expenses of $46,263.29. (*See id.*) No explanation was provided for that discrepancy.

As of the trial on February 20, 2013, Plaintiffs claimed total business expenses of $43,108.96. (Ptfs' Ex 2.) In her recommendations filed with the court on October 24, 2012, Tenace allowed Plaintiffs total expenses of $12,375. Unfortunately, the parties utilized different expense categories to describe the various expenses claimed by Plaintiffs. The parties' differing expense categories created confusion at trial with respect to the specific expenses allowed by Defendant. The parties agreed that Plaintiffs should be allowed at least $12,375 in business

expenses, but were unable to provide a clear explanation of the agreed-upon expenses. To the extent the court was able to discern agreement of the parties, it is reflected in the analysis.

The following is a list of business expenses claimed by Plaintiffs as compared with the expenses allowed by Defendant for the 2009 tax year:[1]

| Expense | Plaintiffs' requested expenses | Defendant's allowed expenses |
|---|---|---|
| Advertising | $2,058.72 | $1,729[2] |
| Vehicle Expenses | $2,479.87 | $307 |
| Contract Labor | $3,750.00 | $3,750 |
| Depreciation (including vehicle) | $16,418.00 | $1,439 |
| Insurance | $2,178.34 | $710 |
| Taxes and Licenses | $280.00 | $280 |
| Travel (Lodging) | $654.29 | $432 |
| Meals and Entertainment (50%) | $176.85 | $86 |
| Utilities | $1,010.00 | $1,010 |
| Accounting | $450.00 | $450 |
| Software | $1,573.51 | $249 |
| Other Computer Expenses | $578.75 | 0 |
| Education | $583.00 | 0 |
| Surveyors Fees | $435.45 | 0 |
| Dues and Memberships | $12.00 | $474 |
| Lease Expense (Office Equipment) | $427.00 | 0 |
| Discovery Office Systems | $25.00 | 0 |
| Licenses | $608.30 | 0 |
| Merchant Fees | $418.62 | $415 |
| Postage | $482.61 | 0 |
| Supplies | $6,853.80 | $910 |
| Office in home | $1,654.85 | 0 |
| Office Expense | 0 | $544 |
| Recording Fees | 0 | $428 |
| **Total** | **$43,108.96** | **$12,375** |

(Ptfs' Ex 2; Def's Ex A at 5.)

/ / /

---

[1] Some categories, such as "Office Expense" and "Recording Fees" were created by Defendant. The expenses were claimed by Plaintiffs under a different category.

[2] Prior to trial, Defendant allowed advertising expenses of $891; at trial, Defendant allowed advertising expenses of $1,729 (total).

Ordinarily, all facts are included in the Statement of Facts. Given the voluminous evidence presented, additional facts regarding specific expenses claimed by Plaintiffs are included only in the Analysis section of this decision.

## II. ANALYSIS

"The Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified by Oregon law. ORS 316.007."[3] *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 *6 (Sept 23, 2005). The legislature adopted, by reference, the federal definition for deductions, including those allowed under IRC section 162.[4] IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" To be "ordinary," the "transaction which gives rise to [the expense] must be of common or frequent occurrence in the type of business involved." *Deputy v. Du Pont,* 308 US 488, 495, 60 S Ct 363, 84 L Ed 416 (1940) (citations omitted). A "necessary" expense is one that is "appropriate and helpful" to the taxpayer's business. *Welch v. Helvering*, 290 US 111, 113, 54 S Ct 8, 78 L Ed 212 (1933). As a general rule, IRC section 262(a) prohibits the deduction of most personal and family expenditures.

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992); *see also* ORS 305.427

/ / /

---

[3] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2007.

[4] All references to the IRC and accompanying regulations are to the 1986 code, and include updates applicable to 2009.

(the burden of proof in the Oregon Tax Court is a preponderance of the evidence and falls "upon the party seeking affirmative relief").

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r* (*Cohan*), 39 F 2d 540, 543-44 (2d Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and any listed property under IRC section 280F(d)(4)(A)(i). Temp Treas Reg 1.274-5T(a). Under IRC section 274(d), a taxpayer must substantiate a claimed expense with adequate records or sufficient evidence corroborating the taxpayer's statement establishing the amount, time, place, and business purpose of the expense. Temp Treas Reg 1.274-5T(b).

A.    *Advertising*

Barott claimed total advertising expenses of $2,058.72 and provided both canceled checks and bank statements to support those claimed expenses. (Ptfs' Exs 6-8.) The parties agreed that Barott should be allowed all claimed advertising expenses, although Defendant categorized a $330 payment to "BNI" as an "other expense" and categorized payments of $108 to Rogue Valley Professionals as "dues and membership." (*See* Ptf's Ex 6.) Barott is allowed advertising expenses of $2,059.

B.    *Auto*

Barott claimed $2,479.87 in "auto" expenses, including $1,508.98 in "diesel" purchases,[5] which Barott testified were for the Ford F250 truck that he used in his business. (Ptfs' Ex 9.)

_____

[5] $13.55 of the claimed "diesel" expenses was for "gas." (Ptf's Ex 9 at 1.)

Barott testified that his Ford F250 truck is his work vehicle and it is his only vehicle that runs on diesel. He testified that he used the Ford F250 exclusively for work and any personal use was de minimis. Barott testified that he also owns an "ATV" that he used in his business. He testified that Plaintiffs own a Subaru that is their personal vehicle. He testified that the only "auto" expense claimed for the "ATV" was "Honda repair" for $207.05. (Ptfs' Ex 9 at 2.) Barott's other claimed auto expenses included an "Oregon DMV License Renewal" fee, and five purchases at "Les Schwab Tire Center." (*Id.*; Ptfs' Ex 10.) In support of his claimed expenses, Barott provided his QuickBooks account detail, canceled checks to the Oregon DMV and Les Schwab, and bank statements for the fuel purchases. (Ptfs' Exs 9-11.) He testified that he made the QuickBooks entries at or close to the time of the expense.

Listed property is subject to more stringent substantiation requirements under IRC section 274(d) and accompanying Treasury Regulations. *See* Temp Treas Reg 1.274-5T(b)(6). Subject to some exceptions, "any passenger automobile" and "any other property used as a means of transportation" is listed property under IRC section 280F(d)(4)(A)(i), (ii). Under IRC section 280F(d)(5)(A), a "passenger automobile" is defined as "any 4-wheeled vehicle ---

> "(i) which is manufactured primarily for use on public streets, roads, and highways, and
>
> "(ii) which is rated at 6,000 pounds unloaded gross vehicle weight or less.
>
> "In the case of a truck or van, clause (ii) shall be applied by substituting 'gross vehicle weight' for 'unloaded gross vehicle weight'."

IRC section 280F(d)(5)(B) states "[t]he term 'passenger automobile' shall not include * * * (iii) under regulations, any truck or van."

The strict substantiation requirements under IRC section 274(d) do not apply to "any qualified nonpersonal use vehicle (as defined in subjection (i))." IRC section 274(i) provides

that "the term 'qualified nonpersonal use vehicle' means any vehicle which, by reason of its nature, is not likely to be used more than a de minimis amount for personal purposes." In *Ewell v. Comm'r*, the U.S. Tax Court determined that the taxpayer's jeep was not a "qualified nonpersonal use vehicle" similar to the following "specialized-use vehicles":

> "clearly marked police and fire vehicles, ambulances, hearses, vehicles designed to carry cargo with a gross weight of more than 14,000 pounds, bucket trucks, cement mixers, combines, cranes, derricks, delivery trucks with seating only for the driver, dump trucks, flatbed trucks, forklifts, refrigerated trucks, school buses, tractors, and other special purpose farm vehicles."

TC Memo 1996-253, WL 283684 at *11 (1996) (citing Temp Treas Reg 1.274-5T(k)(2)(ii) providing a partial list of qualified nonpersonal use vehicles).

Revenue Ruling 86-97 provides additional guidelines for when the IRS "will recognize pickup trucks or vans as 'qualified nonpersonal use vehicles' for purposes of section 1.274-5T(k)(7) of the * * * Regulations." Revenue Ruling 86-97, section three, states:

> "A pickup truck with a loaded gross vehicle weight not over 14,000 pounds is a qualified nonpersonal use vehicle if it falls into one of the following two categories:
>
> > "1. The vehicle is clearly marked with permanently affixed decals or with special painting or other advertising associated with the employer's trade, business, or function and is equipped with at least one of the following: a hydraulic lift gate, permanently installed tanks or drums, permanently installed side boards or panels materially raising the level of the sides of the bed of the pickup truck, or other heavy equipment, such as an electric generator, welder, boom, or crane used to tow automobiles and other vehicles.
> >
> > "2. The vehicle is clearly marked with permanently affixed decals or with special painting or other advertising associated with the employer's trade, business, or function, is actually used primarily for transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling, timbering, or other similar operation, and has been specially designed or modified to a significant degree for such use."

/ / /

Barott did not maintain a log or other records documenting business use of his Ford F250, but he argues that the Ford F250 is a "qualified nonpersonal use vehicle" and is, therefore, not subject to the substantiation requirements of IRC section 274(d) and the accompanying treasury regulations. (*See* Ptfs' Exs 12-13.) Both parties provided photographs of the Ford F250. (Ptfs' Ex 12; Def's Ex B at 35-38.) Barott testified that the ladder rack is removable, but the aluminum boxes installed in the bed of the Ford F250 are not removable. He testified that he can use the Ford F250 to tow a travel trailer and that he has used the Ford F250 to tow the ATV to job sites. Tenace testified that Barott drove the Ford F250 to the Department of Revenue conference in February 2011. She testified that she recalled seeing a decal on the truck and boxes in the bed, but no rack or lights. Tenace testified that she thought the decal was magnetic, but was unsure. She testified that the Ford F250 had front seats and back seats and had the capacity to tow. Teance testified that, in her view it, the Ford F250 was not modified such that it was no longer usable as a personal vehicle.

The court is not persuaded that Barott's Ford F250 was a "qualified nonpersonal use vehicle" under IRC section 274(i) and the accompanying Treasury Regulations and Revenue Ruling. Based on the testimony and evidence presented, the only permanent modification to the Ford F250 is the aluminum boxes installed in the bed. That is not a permanent modification described by Revenue Ruling 86-97, nor is it of a similar type of modification to those described in the Revenue Ruling. As a result, Barott's Ford F250 is subject to the strict substantiation requirements of IRC section 274(d). Although Barott provided evidence of fuel purchases for the Ford F250, he provided no evidence of the business use of the Ford F250 such as a log or other records from which the court could determine the percentage of business use.[6]

---

[6] Treasury Regulation 1.274-5T(c)(2)(ii)(C) states:

Defendant allowed Barott mileage at "$0.55 per mile for 558 miles" for a deduction of $307 based on Barott's travel to a "PLSO conference" in Portland, Oregon, in January 2009. (Def's Ex B at 28.) The court finds that no additional vehicle expenses associated with the Ford F250 are supported for the 2009 tax year.

The ATV is "any other property used as a means of transportation" under IRC section 280F(d)(4)(A)(ii) and, therefore, is subject to the strict substantiation requirements of IRC section 274(d). Barott did not maintain a log or provide any other records from which the court can determine the business use of his ATV. No expenses associated with the ATV are allowed.

C.    *Depreciation*

Barott claimed $16,418 total depreciation for the following: Leica Smartstation ($6,582), Ford F250 ($8,397), Digital Camera ($65), Surveying Equipment ($781), and Surveying Equipment ($593). (Ptfs' Ex 16 at 1.) Defendant allowed Plaintiffs depreciation of $1,439 for the digital camera and surveying equipment. (Def's Exs A at 6, B at 30.) Defendant did not allow depreciation for the Leica Smartstation because it "has been depreciated since 2006 AND has been expensed out as a 'lease payment.' This has been a double deduction since 2006 and is therefore fully depreciated." (Def's Ex A at 6.) Derby testified that he "re-characterized" the Leica Smartstation lease payments as depreciation. He testified that the burden is on Barott to prove his basis in the Leica Smartstation. Barott provided a document entitled "Lease

---

"*Substantiation of business use of listed property* —( *1* ) *Degree of substantiation.* In order to constitute an adequate record (within the meaning of section 274(d) and this paragraph (c)(2)(ii)), which substantiates business/investment use of listed property (as defined in § 1.280F-6T(d)(3)), the record must contain sufficient information as to each element of every business/investment use. However, the level of detail required in an adequate record to substantiate business/investment use may vary depending upon the facts and circumstances. For example, a taxpayer who uses a truck for both business and personal purposes and whose only business use of a truck is to make deliveries to customers on an established route may satisfy the adequate record requirement by recording the total number miles driven during the taxable year, the length of the delivery route once, and the date of each trip at or near the time of the trips. Alternatively, the taxpayer may establish the date of each trip with a receipt, record of delivery, or other documentary evidence."

Agreement," dated May 1, 2006, for the Leica Smartstation. (Ptfs' Ex 16 at 4.) Derby noted in his conference decision that the agreement is "not a true lease" and it "provides that at the end of the lease term [Barott] own[s] the equipment for a payment of one dollar." (Ptfs' Ex 4 at 3; *see also* Ptfs' Ex 16 at 4.) Barott testified that he erroneously deducted both lease payments and depreciation for the Leica Smartstation on prior tax year returns.

IRC section 1016(a) requires

"[p]roper adjustment in respect of the property * * * * * (2) * * * for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount – (A) allowed as deductions in computing taxable income under this subtitle or prior income tax laws, and (B) resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer's taxes under this subtitle * * *, or prior income, war-profits, or excess-profits tax laws, but not less than the amount allowable under this subtitle or prior income tax laws."

A deduction claimed on a prior return that was not audited was "allowed" for purposes of IRC section 1016(a)(2). *See Virginia Hotel Corp. of Lynchburg v. Helvering*, 319 US 523, 527, 63 S Ct 1260 (1943) ("If the deductions are not challenged, they certainly are 'allowed' since tax liability is [] determined on the basis of the returns"). Barott testified that, on prior year tax returns, he took deductions for both depreciation and lease payments on the Leica Smartstation. After combining the claimed lease payments and depreciation for years prior to the tax year before the court, it is unclear whether the cost of the Leica Smartstation has been fully deducted. The burden of proof falls on Barott to prove that he is entitled to claim a depreciation deduction for the Leica Smartstation. Barott has not established that he is entitled to any additional depreciation for the Leica Smartstation.

Barott's claimed depreciation for the Ford F250 is not allowed because, as discussed above, he failed to provide evidence of his business use of the Ford F250. The court concludes that Barott is allowed depreciation of $1,439, as agreed to by Defendant.

D.    *Insurance*

Barott claimed a total deduction of $2,178.34 for insurance. (Ptfs' Ex 17 at 1.)

Defendant allowed $710 for The Hartford business insurance. (Def's Exs A at 6, B at 54-56.)

Barott provided canceled checks demonstrating payments for The Hartford Business insurance

totaling $1,117. (Ptfs' Ex 18.) Barott testified that he paid $523.94 to SAIF Corporation for

workers compensations coverage for any temporary employees and provided a canceled check

for that payment. (*See* Ptfs' Exs 17 at 1, 18 at 11-12.) Barott testified that he paid $156.40 to

USAA for the Ford F250. (*See* Ptfs' Exs 17 at 1, 18 at 5-6.) He testified that he paid $77 to

Progressive for ATV insurance. (*See* Ptfs' Exs 17 at 1, 18 at 13-14.) Barott testified that he paid

$127 to AAA Oregon and $127 to All State Motor Club, which is similar to AAA. (*See* Ptfs'

Exs 17 at 1, 18 at 15-16, 19.) Barott testified that AAA Oregon and All State Motor Club cover

all vehicles and there is no additional cost based on the number of vehicles. The court finds that

Barott's insurance payments for the Ford F250 and the ATV are not allowed because Barott has

not substantiated the business use of either vehicle. The court further finds that Barott's

payments to AAA and All State Motor Club were personal expenses. Furthermore, the court

finds Barott substantiated payments of $1,117 for The Hartford business insurance and $523.94

to SAIF Corporation, both of which are business expenses. Barott is allowed insurance expenses

of $1,641.

E.    *Leased equipment*

Barott testified that he paid $427 to "Wells Fargo Financial Leasing" to lease a copier

and scanner and provided canceled checks. (*See* Ptfs' Exs 20, 21.) It was unclear at trial

whether Defendant had allowed that expense. (*See* Def's Ex C at 23-24.) The court finds that

/ / /

Barott adequately substantiated the lease payment and the business purpose; the expense is allowed.

F.      *Lodging*

Barott claimed $654.29 in lodging expenses. (Ptfs' Ex 22.) Defendant allowed $432 for Barott's lodging to attend a "PLSO" [Professional Land Surveyors of Oregon] conference on January 30, 2009. (Ptfs' Ex 22; Def's Ex A at 6.) Barott testified that he also claimed $222.20 for lodging at Driftwood Shores to attend a conference in Florence, Oregon. (*See* Ptfs' Exs 22, 23 at 3, 24.) The court finds that Barott adequately substantiated the payment and the business purpose of his lodging expenses. Barott's claimed lodging expenses are allowed.

G.      *Meals and Entertainment*

Barott claimed $353.69 for meals and entertainment and provided bank statements proving payment of the claimed expenses. (Ptfs' Exs 25, 26.) Barott testified that the meals labeled "PLSO" were for PLSO lunches during which he received continuing education at that conference. (*See* Ptfs' Ex 25.) Barott testified that the meals labeled "BNI Power Team" were networking lunches. (*See id.*) He testified that the two meals labeled "Driftwood Shores" were during his attendance at the conference at Driftwood Shores in September 2009. (*See id.*) Defendant allowed the "per-diem amount" of $172, which was reduced by 50 percent for an $86 deduction. (Def's Ex A at 6.) The court finds that Barott's claimed meal expenses should be allowed with the exception of $25.16 paid to Emman's Meat Market. The business purpose is unclear and memo states "Lunch & More." (Ptfs' Ex 25.) Barott is allowed total meal expenses of $328, or $164 after the 50 percent limitation.

/ / /

/ / /

H.      *Education*

Barott claimed $583 of continuing education expenses.  (Ptfs' Ex 32.)  He provided a canceled check for $70 to the "Rogue River Chapter-PLSO" for a workshop on September 11, 2009, and bank statements substantiating payment of $78 to "Southern Oregon Printing" and $435 to "PLSO."  (Ptfs' Exs 33-34.)  Barott testified that the payment of $435 to PLSO was for a conference.  Barott testified that the payment to Southern Oregon Printing was to print brochures for a workshop put on by a professional organization of which he was an officer.  He testified that he paid the expense because of the organization's budget problems. Tenace testified that Plaintiffs' return did not include a line item for education expenses, so she was unsure whether the claimed expenses were previously allowed.  Barott did not establish that his payment of $78 for brochure printing was an ordinary and necessary business expense for which he had no right to reimbursement.  Barott is allowed education expenses of $505.  The court finds that those expenses were not otherwise allowed by Defendant.

I.      *Surveyor Fees*

Barott claimed $435.45 in "County surveyor fees" paid to various Oregon cities and counties.  (Ptfs' Ex 35.)  Tenace testified that she created an expense category for "recording fees" and allowed expenses of $428 for that category; the "recording fees" allowed by Tenace were the same expenses claimed by Barott as "surveyor's fees."  Barott provided canceled checks substantiating payments of $603.45.[7]  (Ptfs' Ex 36.)  No check or bank statement was provided for an $18 payment to "Jackson County Surveyor" for "Copy Fees Nov. 2009" or for a payment of $83 to "Jackson County Surveyor" on June 29, 2009.  (*See* Ptfs' Ex 35.) Several of those payments were subtracted from Barott's total expenses for recording fees, apparently

---

[7] Check number 2178 to Jackson County Surveyor for $57.00 for "October 2009 copies" was provided twice.  (Ptfs' Ex 36 at 23, 25.)

because they were reimbursed by clients. (*See* Ptfs' Ex 35.) Barott is allowed an expense of $417 for surveyor fees.

J.      *Dues and subscriptions*

Barott claimed an expense of $12 for 2009 dues to the "Oregon GPS Users Group" and provided a canceled check. (Ptfs' Exs 37-38.) Defendant allowed the expense at trial.

K.      *Discovery Office Systems*

Barott testified that he incurred an expense of $25 for payment to "Discovery Office Systems" for copier maintenance; he provided a canceled check. (*See* Ptfs' Exs 39-40.) Tenace testified that she allowed the expense under the category "Office expense." (*See* Def's Ex A at 7.) Barott's $25 copier maintenance expense is allowed.

L.      *Licenses and Permits*

Barott claimed expenses of $608.30 for payments to "ACSM-CFEDS," "OSBEELS," "PLSO," and "ACSM NSPS." (Ptfs' Ex 41.) He provided a canceled check substantiating a $220 payment to "OSBEELS" and bank statements substantiating the other three payments. (Ptfs' Ex 42, 43.) Barott testified that the payments to ACSM-CFEDS and OSBEELS were both for licenses and the payments to PLSO and ACSM were both dues. Tenace testified that Defendant allowed $280 under the category "taxes and licenses" for the payments to ACSM-CFEDS and OSBEELS. (*See* Def's Ex A at 6.) An expense of $280 was already allowed and Barott is allowed additional expenses of $328.30, for a total expense of $608.

M.      *Merchant Fees*

Barott claimed $418.82 in merchant fees. (Ptfs' Ex 44.) Defendant previously allowed $415. (Def's Ex A at 7.) Barott testified that the fees are identified on his bank statements as "Direct Withdrawal Bankcard ACH3." (*See, e.g.,* Ptfs' Ex 45 at 2.) The court reviewed Barott's

bank statements and found that fees of $418.82 are substantiated. (Ptfs' Ex 45.) Barott is allowed an expense of $419.

N.      *Postage & Delivery*

Barott claimed $482.61 of expenses for postage and delivery fees; he provided bank statements to substantiate the claimed payments. (Ptfs' Exs 46-47.) Barott testified that he pays monthly fees to Stamps.com to print postage. (*See* Ptfs' Exs 46, 48.) He testified that two payments to FedEx for "CTSI CWIN" were for the Confederated Tribes of Siletz Indians. (*See* Ptfs' Ex 46.) Barott testified that the two payments to FedEx for "CALSURV" were to ship maps to southern California. (*See id.*) Tenace testified that this expense category was not originally included on Plaintiffs' income tax return. (*See* Def's Ex A at 7.) She testified that, if the expense was allowed, it was under "office expenses." It does not appear to the court that the expense was previously allowed by Defendant. Barott is allowed postage and delivery expenses of $483.

O.      *Home office and computer in home office*

Barott testified that he remodeled Plaintiffs' home to create an office in the garage. (*See* Ptfs' Exs 52-53.) He testified that he began using the garage as an office at the end of 2008. Barott testified that, in addition to the office in the garage, there is also a washer, dryer, and freezer, but he did not include those in his calculation of office square footage. (*See* Ptfs' Ex 54.) Barott testified that the garage is 576 square feet and he determined that 360 square feet, or 63 percent, of the garage is his office. (*See id.*) Barott determined that his office comprises 17 percent of the square footage of Plaintiffs' entire house. (*Id.*)

Barott claimed $1,654.85 in expenses for his home office, which reflected 17 percent of Plaintiffs' reported total utilities, including gas and electric, water, garbage, "Medford Water

Commission", and telephone. (Ptfs' Ex 54.) Barott provided spreadsheets detailing total utility bills for Plaintiffs' home in 2009. (Ptfs' Ex 55.) He did not provide invoices, canceled checks, or bank statements for those utility expenses.[8] Barott also determined depreciation of $1,162.50 based on 63 percent of the office improvement, 63 percent of the electrical system, and 17 percent of the house.[9] (*Id.* at 54.) Barott provided two pages listing total costs to remodel Plaintiffs' home to include Barott's office. (Ptfs' Ex 56.) He did not provide invoices, canceled checks, or bank statements for the remodel costs. Barott testified that the remodel costs included finishing the garage, insulating the garage, adding a door and windows, and installing power outlets.[10] Unfortunately, Barott failed to provide any substantiation of his claimed home office expenses. As a result, Barott's claimed home office expenses and depreciation are not allowed.

Barott also claimed $578.75 for computer expenses and provided canceled checks substantiating payment of each of the claimed expenses. (Ptfs' Exs 30-31.) Barott testified that payments to "Excaliber Computer Solutions" were for "in home maintenance" of his computer and payments to "Dell" were for various computer-related purchases such as keyboards. (*See id.*) Tenace testified that Plaintiffs' return did not include a line item for computer expenses, so it is unclear whether the claimed expenses were previously allowed; they may have been allowed as "office expenses." The court reviewed Barott's evidence and found that his claimed computer expenses were not otherwise allowed by Defendant.

Derby testified that he did not allow computer and related expenses because computers are listed property under IRC section 280F(d)(4) and Barott did not maintain a log detailing his

[8] Tenace testified that she allowed an expense of $288 for the Charter Communications telephone line and $722 for a data line, for total utility expenses of $1,010. (*See* Def's Ex A at 6; Ptfs' Ex 55 at 4.)

[9] That depreciation was not included in the $16,418 depreciation discussed above. (*See* Ptfs' Ex 16.)

[10] Barott testified that he has all of the receipts for the remodel. He testified that the remodel was completed in 2008 and that is why he did not provide receipts.

business use of the computer. Plaintiffs argue, in response, the computer was located in Barott's home office, which was a "regular business establishment" under IRC section 280F(d)(4)(B). Under IRC section 280F(d)(4)(A)(iv), "any computer or peripheral equipment (as defined in section 168(i)(2)(B))" is "listed property." IRC section 280F(d)(4)(B) states:

> "The term 'listed property' shall not include any computer or peripheral equipment (as so defined) used exclusively at a regular business establishment and owned or leased by the person operating such establishment. For purposes of the preceding sentence, any portion of a dwelling unit shall be treated as a regular business establishment if (and only if) the requirements of section 280A(c)(1) are met with respect to such portion."

The question is whether Barott's home office meets the requirements of IRC section 280A(c)(1).

Tenace testified that Barott's home office was not originally included on Plaintiffs' income tax return and that Barott's use of the office did not appear to be exclusively for his business. Tenace testified that Barott admitted that he did not use his home office exclusively for business. She testified that, in her view, if Barott paid even one personal bill from his business computer, his home office was not used exclusively for business. Barott testified that Plaintiffs "had a separate account for personal bills." He testified that he "may" have used his work computer to pay a personal bill in the past; he could not testify that he had never done so.

Generally, IRC section 280A prohibits the deduction of otherwise allowable expenses associated with the use of the taxpayer's home. IRC section 280A(c)(1) creates an exception to the prohibition for "any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis – (A) as the principal place of business for any trade or business of the taxpayer [.]" The flush language of IRC section 280A(c)(1) states:

> "For purposes of subparagraph (A), the term 'principal place of business' includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business."

The parties dispute whether Barott's home office was used exclusively for business.[11] The question of exclusive use is a "fact-specific inquiry" and it can be determined based on "credible testimony." *Rayden v. Comm'r* (*Rayden*), TC Memo 2011-1, WL 9079 at *2, *4 (2011) (citation omitted). The legislative history of IRC section 280A explains:

> "Exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business. The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test. Thus, for example, a taxpayer who uses a den in his dwelling unit to write legal briefs, prepare tax returns, or engage in similar activities as well as for personal purposes, will be denied a deduction for the expenses paid or incurred in connection with the use of the residence which are allocable to these activities."

*Hefti v. Comm'r* (*Hefti*), TC Memo 1988-22, WL 2444 at 10 (1988), *aff'd without published opinion*, 894 F2d 1340 (8th Cir 1989) (quoting S Rept 94-938, 4, 148, 1976-3 CB (Vol 3) 49, 186). "The use of a portion of a home for both personal and business purposes does not meet the exclusive use requirement of section 280A(c)." *Sengpiehl v. Comm'r* (*Sengpiehl*), TC Memo 1998-23, WL 17616 at *3 (1998) (citing *Sam Goldberger, Inc. v. Comm'r* 88 TC 1532, 1556-1557 (1987)). "Any personal use of a room or segregated area will preclude its use in computing depreciation or other allocable expenditures, unless some or all of the use of the room was for the storage of inventory." *Hefti*, WL 2444 at 10. "The exclusive-use requirement in section 280A(c)(1) is an 'all-or-nothing' standard." *Bogue v. Comm'r*, TC Memo 2011-164, WL 2709818 at *7 (2011) (citing *Hamacher v. Comm'r*, 94 TC 348, 357, 1990 WL 25005 (1990)).

In *Hefti*, the taxpayers contended that "89 percent of their main residence and 100 percent of their addition were being exclusively and regularly used for business purposes during the

---

[11] It does not appear to the court that Defendant disputes that Barott's home office was his "principal place of business." Defendant did not contend that Barott had another place of business or that he did not work at his home office.

taxable years * * *.  The correlative of [the taxpayers'] position is that they lived in no part of the addition and that they, along with their two children, resided in only 11 percent of their residence." *Hefti*, WL 2444 at 11.  The court found "through cross examination, third-party testimony and documentary evidence * * * [that taxpayers'] claimed percentage business usage was substantially overstated * * *." *Id.*  Similarly, the taxpayer in *Rayden* contended that "70-71 percent of his home was used exclusively and regularly for business during the 2004 tax year." WL 9079 at *3.  The court found it "implausible that the taxpayer and his family 'had no social or personal life in any portion of the residence other than a few bedrooms and the kitchen.' " *Id*., (citing *Hefti*).  The court in *Jenkins v. Comm'r*, TC Memo 1988-292, WL 66221 (1988), held that the taxpayer's home office was not "exclusively used for business" because she "testified that she used the room claimed as a home office to study in when nobody was using the room."

By contrast, in *Sengpiehl*, the court found that the taxpayer's living room was used exclusively for business based on his credible testimony:

> "Petitioner testified that he used the living room as an informal meeting area and as a conference room in his legal practice.  Petitioner testified that he met with at least 54 clients in this room during 1991.  Petitioner testified that he and Mrs. Sengpiehl usually did not entertain at home and that their children never had guests at the house.  He further testified that he was the only member of the family who played the piano and that he did not do so during the year in issue. Two of petitioners' clients testified that when they met with petitioner, they had free access to the entire first floor, and testified to meeting with petitioner in the living room."

*Sengpiehl*, WL 17616 at *4.

Although " '[e]xclusive use' is narrowly construed," the courts have acknowledged some personal use as de minimis.  *Rayden*, WL 9079 at *3, *4.  For instance, the U.S. Tax Court "has previously held that the mere nonbusiness passage from one room to the next can be classified as a de minimis personal use of the room and will not disqualify the room from the exclusivity

requirement of section 280A(c)(1)." *Id.* at *3 (citations omitted). However, use of a "den, vestibule, and adjoining bar * * * 'maybe one or two times a year * * * by family that [was] visiting' " was not considered "de minimis * * * personal use[.]" *Id.* at *4. Similarly, use of a "dining room for family dinners * * * on Saturdays and Sundays only, on three birthdays, and on Thanksgiving[]" was not considered "de minimis." *Sengpiehl* , WL 17616 at *4.

The court found Barott to be credible and the court is persuaded that he used his home office exclusively for business in 2009. The photographs that Barott provided of his work space provide additional support to his credible testimony. Although Barott testified that he "may" have paid a personal bill on his work computer at some point in the past, he testified that Plaintiffs maintained a separate account for their personal expenses. The court received no other evidence that Barott used his home office for personal purposes. The court finds that Barott's home office met the requirements of IRC section 280A(c)(1) for the 2009 tax year. As a result, Barott is allowed computer expenses of $579 as claimed.

P.    *Software*

Barott claimed expenses of $1,573.51 for computer software. (Ptfs' Ex 27.) He provided canceled checks for $525 to "Carlson Software, Inc." and $249 to "Blue Marble Geographics." (Ptfs' Ex 28.) Barott provided bank statements substantiating payment for the remaining software expenses claimed. (Ptfs' Ex 29.) Barott testified regarding the various software expenses claimed. Tenace allowed software expenses of $249 to Blue Marble Geographics. (Def's Ex A at 6.) Barott's is allowed software expenses of $1,574.

Q.    *Supplies*

Barott claimed expenses of $6,853.80 for supplies; he provided canceled checks and bank statements to substantiate payment. (Ptfs' Exs 49 at 1-2, 50, 51.) Tenace testified that

Defendant previously allowed $910 for supplies purchased from Pacific Survey Supply. (*See* Def's Ex A at 7; Ptfs' Ex 49.) Based on the court's review, Barott incurred expenses of $811.11 at Pacific Supply. Barott testified that his purchases from "FEMA Map Store" were for electronic and paper maps. (*See* Ptfs' Ex 49.) Tenace testified that she agrees that FEMA Map Store purchases are ordinary and necessary business expenses. Barott's FEMA Map Store purchases total $75, of which $70 is substantiated by bank statements. (Ptfs' Exs 49, 51.) Barott testified that Kuker-Ranken is a Portland survey supply store; he substantiated payments totaling $327.29 to Kuker-Ranken. (*See id.*) The majority of Barott's remaining claimed expenses were purchases at Staples, Dell, Office Depot, Radio Shack, and other such stores. (Ptfs' Ex 49.) Barott testified that those purchases were for various items used in his business and the business purpose is stated in the memo line of his QuickBooks account. (*See id.*) He testified that he wrote all of the memo line entries. Teance testified that her concern with Barott's claimed supplies expenses is that many items could be personal, such as purchases made at Staples, Office Depot, and similar stores.

The court is persuaded by Barott's testimony, QuickBooks memos, canceled checks, and bank statements that he incurred expenses of $6,113.86 for business supplies.[12] Some of Barott's claimed supplies could have been categorized as computer expenses (*i.e.* "print cartridges," "Printer HP 6988," "HP 450 Print Cartridges," and "RAM for HP Business Inkjet 2800"). However, the court reviewed Barott's evidence and found none of those claimed supplies expenses were included in Barott's claimed computer expenses. Barott is allowed expenses of $6,114 for business supplies.

---

[12] The court finds that Barott's purchase of "ATV battery" should not be allowed. Additionally, several supplies expenses, such as "American Express," "ATM-Cash," and "computer stuff," were insufficiently substantiated or clarified; as a result, the court disallows those expenses.

### III. CONCLUSION

After careful consideration of the evidence presented, the court finds that Plaintiffs have substantiated some of their claimed business deductions for the 2009 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2009 tax year, Plaintiffs are allowed the following business expenses:

| | |
|---|---|
| Advertising: | $2,059 |
| Vehicle Expenses: | $307 |
| Contract Labor: | $3,750 |
| Depreciation: | $1,439 |
| Insurance: | $1,641 |
| Taxes and Licenses: | $280 |
| Lodging: | $654 |
| Meals and Entertainment (50 percent): | $164 |
| Utilities: | $1,010 |
| Accounting: | $450 |
| Software: | $1,574 |
| Computer: | $579 |
| Education: | $505 |
| Surveyor Fees: | $417 |
| Dues and Memberships: | $12 |
| Office Equipment Lease: | $427 |
| Discovery Office Systems: | $25 |
| Licenses and Permits: | $608 |

| | |
|---|---|
| Merchant Fees: | $419 |
| Postage and Delivery: | $483 |
| Supplies: | $6,114 |

Dated this ____ day of April 2013.

_____
ALLISON R. BOOMER
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on April 30, 2013. The Court filed and entered this document on April 30, 2013.*